IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MATTHEW ALAN CLENDENNEN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | Civil Action No. 1:15-CV-1041 |
| BRENT STROMAN, MANUEL CHAVEZ, § | |
| ABELINO "ABEL" REYNA, and JOHN § | |
| DOE, § | |
| § | |
| Defendants. § | |

## DEFENDANT REYNA'S MOTION TO DISMISS AND BRIEF

NOW COMES Defendant Abelino "Abel" Reyna (hereinafter "Defendant", or "Reyna"), and, *subject to his pending Motion to Transfer Venue*, files this his Motion to Dismiss pursuant to Fed.R.Civ.P, 12(b)(6) and in support thereof respectfully shows as follows:

I.
**SUMMARY**

Plaintiff has been indicted by the McLennan County Grand Jury for the offense of Engaging in Organized Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault. Plaintiff's indictment is fatal to his claims. To the extent that Plaintiff is claiming that Defendant Reyna, the duly elected District Attorney of McLennan County, committed some sort of misconduct that tainted the McLennan County Grand Jury, Reyna is entitled to absolute prosecutorial immunity from such a claim.

In the unlikely event that the Court concludes that Reyna is not entitled absolute prosecutorial immunity, Reyna is entitled, alternatively, to qualified immunity from Plaintiff's claims. In multi-suspect, criminal enterprise cases, the law is not clearly established that the type of uniform affidavits used in this case could not satisfy the requirement of probable cause. The

case law demonstrates that a reasonable official could have believed that the Fourth Amendment did not require a separate, specific probable cause determination with respect to each individual in a large riotous group before making arrests. Plaintiff's claims against Reyna should be dismissed on the basis of prosecutorial immunity or, in the alternative, on the basis of qualified immunity.

## II.
## PLAINTIFF'S ALLEGATIONS[1]

### A.   Nature of the Case

Plaintiff Matthew Clendennen, a member of the Scimitars Motorcycle Club, brings this suit based upon the aftermath of the violence that erupted between rival motorcycle gangs at the Twin Peaks restaurant in Waco, Texas on May 17, 2015, during which nine persons were killed and many more injured. Clendennen brings this suit pursuant to 42 U.S.C. §1983 against Waco Police Chief Brent Stroman, Waco Police Officer Manuel Chavez, McLennan County District Attorney Abelino Reyna, and John Doe, an unknown Texas DPS Officer. Clendennen claims that, despite his indictment for the felony offense of Engaging in Organized Criminal Activity, his arrest for that offense violated his rights under the 4th and 14th Amendments. Clendennen alleges that Defendants lacked probable cause to arrest him and that they conspired to violate his civil rights.

### B.   The Battle at Twin Peaks

On May 17, 2015, hundreds of motorcyclists from numerous motorcycle clubs from across Texas gathered in Waco for a meeting of the Texas Confederation of Clubs & Independents ("COC"). See Plaintiff's Original Complaint. Pl.'s Comp. p. 3 ¶9. Prior to the

---

[1] Since this is a Rule 12(b)(6) motion to dismiss, the Court must accept as true all *well-pleaded* facts. Defendant accepts as true only the well-pleaded facts in Plaintiff's Original Complaint and only accepts them for the purposes of this Motion to Dismiss, and does not admit to them for any other purpose.

meeting there was tension between some members of the Bandidos and the Cossacks that was known to law enforcement. Pl's Comp. p. 5, ¶17. Law enforcement was on the scene because of awareness of friction between members of the Bandidos Motorcycle Club ("Bandidos") and the Cossacks Motorcycle Club (" Cossacks")[2]. *Id*. On or about noon on May 17, 2015, an altercation occurred between several individuals at the COC meeting, which quickly escalated into gun shots. Pl.'s Comp., p. 5, ¶18. The violence that erupted at the meeting resulting in the deaths of nine persons, and injuries to numerous others. *Id.* at p. 3, ¶10. After the shooting had stopped, law enforcement took control of the premises. *Id.* at pp. 5-6, ¶20.

### C.     The Plaintiff is Indicted

On November 10, 2015, a McLennan County Grand Jury indicted Plaintiff, along with 105 others, for the offense of Engaging in Organized Criminal Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault. Pl.'s Comp., p. 12, ¶47.

### D.     Plaintiff's Allegations Against Reyna

Plaintiff alleges that Reyna and others decided that individuals would be arrested and charged with Engaging in Organized Criminal Activity based entirely on the individual's presence at the scene, the motorcycle club that Defendants presumed the individuals were associated with, and/or the clothing they were wearing at the time of the events. Pl.'s Comp., p. 4, ¶12. Plaintiff alleges that Defendants had no particularized evidence relating to specific individuals. *Id*.

Defendant Chavez, a detective in the Waco Police Department Special Crimes Unit, was the lead investigator of the Twin Peaks incident that occurred on May 17, 2015. Pl.'s Comp., p. 6, ¶21. Plaintiff alleges that Reyna arrived at the scene and began investigating the shooting

---

[2] Law enforcement was also aware of friction between and among clubs affiliated with the Cossacks and Bandidos.

along with law enforcement officials from various local agencies. *Id.* at p. 6, ¶22. Plaintiff alleges that eventually all individuals in attendance at the COC meeting were taken to the Waco Convention Center to be interviewed by Waco Police Department detectives, Texas Rangers, and DPS special agents. *Id.* at p. 6, ¶23.

Plaintiff alleges that at approximately 8:30 p.m. on May 17, 2015, Defendant Chavez stopped all the interviews because Defendant Reyna had called a meeting. Pl.'s Comp., p. 7, ¶28. Thereafter, Chavez, Reyna, and others allegedly met from approximately 9:00 p.m. to 10:30 p.m., after which investigators were allegedly informed that Defendants had decided to arrest all motorcyclists that met certain criteria and to charge each of them with the offense of Engaging in Organized Criminal Activity. *Id.*

Plaintiff alleges that Defendants Stroman and/or Reyna provided a criteria for arrest for all detectives to follow in determining who would be arrested. Pl.'s Comp., pp. 7-8, ¶29. Plaintiff alleges that the Defendants made the determination to arrest based on motorcycle club association and/or clothing, patches, key chains, etc…, that the Defendants decided reflected "support" for the Bandidos or Cossacks. *Id.*

Plaintiff alleges that on May 18, 2015, Defendants caused the issuance of a general warrant to be used for the purpose of obtaining arrest warrants for the 177 individuals arrested, including the Plaintiff. Pl.'s Comp., p. 8, ¶32. Plaintiff alleges that an identical fill-in-the name affidavit was used as the basis for probable cause for all of the arrested persons. *Id.* at p. 8, ¶33. Plaintiff alleges that the affidavit does not set forth particularized facts against the Plaintiff that would establish probable cause. *Id.* at p. 9, ¶34. Plaintiff alleges that Defendant Chavez presented the affidavits to the Magistrate even though he knew they were open-ended, false, misleading, were wholly lacking in probable cause, and were filled with conclusory, inaccurate

statements and/or facts. *Id*. at p. 9, ¶37-¶38.

According to Plaintiff, the probable cause affidavit supporting Plaintiff's arrest allegedly fails to identify one fact specific to Plaintiff to establish probable cause to arrest and incarcerate him. Pl.'s Comp., pp. 13-14, ¶61. Plaintiff alleges that despite the lack of any basis for probable cause, he was arrested for Engaging in Organized Criminal Activity with a bond of $1,000,000, after which he spent 17 days in jail. *Id.* at p. 14, ¶63. Plaintiff asserts that he was able to post bail after his bond was lowered. *Id.*

Plaintiff alleges that Reyna caused a facially deficient, fill-in-the-name template affidavit, with no particularized facts about Plaintiff, to be presented to a Magistrate Judge to obtain an arrest warrant. Pl.'s Comp., p. 15, ¶67. Alternatively, Plaintiff pleads that Reyna caused an affidavit against Plaintiff to be presented to a Magistrate Judge that he knew to be materially false and misleading. Pl.'s Comp., pp. 16-17, ¶75.

According to Plaintiff, following the incident at Twin Peaks on May 17, 2015, Defendant Reyna, and others entered into a conspiracy to deprive Plaintiff of his Fourth Amendment right to be free from unlawful seizure and incarceration. Pl.'s Comp., p. 19, ¶86. Defendants allegedly acted together to carry out an illegal seizure and arrest and incarceration of Plaintiff when they allegedly knew there was no probable cause to arrest or charge him with the offense of Engaging in Organized Criminal Activity. *Id.* Plaintiff alleges that Reyna was involved as an investigator in the events, prior to a determination of probable cause, rather than as an advocate and is allegedly not entitled to absolute immunity for his conduct during the investigative phase of the events. *Id.*, at p. 20, ¶90.

## III.
## ARGUMENT AND AUTHORITIES

### A.  Motion to Dismiss Standard

A court is authorized to dismiss a claim for failure to state a claim upon which relief can be granted if it appears, beyond doubt, that a plaintiff can prove no set of facts to support his claim that would entitle him to relief.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 at 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983); *F.D.I.C. v. Nathan*, 804 F.Supp. 888 at 891 (S.D.Tex. 1992).  To avoid dismissal, a plaintiff must allege the elements of a right to recover from a defendant.  *Kaiser Aluminum*, 677 F.2d at 1050.  To be "well-pleaded", however, a complaint must state specific facts to support the claim, not merely conclusions and unwarranted factual deductions. *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061 at 1067 (5th Cir. 1994); *Fee v. Herndon*, 900 F.2d 804 at 807 (5th Cir. 1990), *cert. denied*, 498 U.S. 908 (1990); *Lewis v. Law-Yone*, 813 F.Supp. 1247 at 1252-53 (N.D.Tex. 1993). Moreover, "a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 at 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 at 1949 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court should "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

### B.  Plaintiff Has Failed to Plead Viable Claims

#### 1)  Plaintiff's 4th Amendment Wrongful Arrest Claim Fails

An arrest violates the 4th Amendment when it lacks probable cause. *Deville v. Marcantel*, 567 F.3d 156 at 164 (5th Cir. 2009); *Flores v. City of Palacios,* 381 F.3d 391 at 402 (5th

Cir.2004) "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Deville*, 567 F.3d at 164 (quoting *Resendiz v. Miller,* 203 F.3d 902 at 903 (5th Cir.2000)).

When an arrest is obtained pursuant to a warrant, the officer who obtained the warrant can still be held liable for unlawful arrest if "the warrant application is so lacking in indicia or probable cause as to render official belief in its existence unreasonable..." *Malley v. Briggs*, 475 U.S. 335 at 344-45 (1986).  In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that it was a violation of the 4th Amendment for an officer to knowingly, intentionally, or with reckless disregard for the truth make false statements in an affidavit in support of a warrant. *Franks*, 438 U.S. at 155-56 and 171-72.

      a)      **An Indictment Breaks the Chain of Causation for a Wrongful Arrest Claims**

Plaintiff has admitted that *he has been indicted* by the McLennan County Grand Jury for the offense for which he claims he was arrested without probable cause. Pl.'s Comp., p. 12, ¶47. Plaintiff's indictment is fatal to his claim of unlawful arrest. "A grand jury indictment is sufficient to establish probable cause [citation omitted].  When the facts supporting an arrest 'are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party. [citation omitted]'" *Russell v. Altom*, 546 Fed.Appx. 432 at 436 (5th Cir. 2012) (citing *Gerstein v. Pugh,* 420 U.S. 103 at 117, n. 19 (1975), and *Cuadra v. Houston ISD,* 626 F.3d 808 at 813 (5th Cir.2010)); see also *Glenn v. City of Tyler*, 242 F.3d 307 at 313 (5th Cir. 2001).  As Plaintiff's indictment by the McLennan County Grand Jury establishes probable cause for his arrest, any

claim he asserts for unlawful arrest fails as a matter of law and must be dismissed.[3]

### (b)  Reyna is Enitled to Prosecutorial Immunity

Prosecutors are absolutely immune from Section 1983 monetary liability for "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409 at 431 (1976).[4] Absolute prosecutorial immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously. *Id.* at 427. Prosecutorial immunity protects a prosecutor's conduct before a grand jury. *Burns v. Reed*, 500 U.S. 478 at 490 (1991); *Lewis v. City of Waxahachie*, 465 Fed.Appx. 383 at 365 (N.D. Tex. 2012); *Brown v. Lyford*, 243 F.3d 185 at 191 (5th Cir. 2001). "[T]he cases establish that presentation of evidence to a grand jury in a manner calculated to obtain an indictment, *even when maliciously, wantonly, or negligently accomplished*, is immunized by [absolute prosecutorial immunity]." *Morrison v. City of Baton Rouge*, 761 F.2d 242 at 248 (5th Cir. 1985) (emphasis added). Thus, to the extent that Plaintiff claims (and even if he were to actually *prove*) that Reyna somehow committed misconduct that "tainted" the McLennan County Grand Jury that indicted him, such actions cannot serve as the basis for any civil liability of Reyna. Accordingly, Plaintiff's claims against Reyna should be dismissed based on prosecutorial immunity.

### (c)  Reyna is Entitled to Qualified Immunity

Officials exercising discretionary authority are entitled to the defense of qualified

---

[3] Plaintiff will likely argue that an indictment will not break the chain of causation in an unlawful arrest claim if a plaintiff can show that the defendant tainted the deliberations of the grand jury. See *Russell*, 546 Fed. Appx. at 437 (citing *Hand v. Gary*, 838 F.2d 1420 at 1428 (5th Cir. 1988)); *Cuadra*, 626 F.3d at 813. As will be demonstrated in the next section, this argument simply does not apply to a prosecutor such as Defendant Reyna. Prosecutors are entitled to prosecutorial immunity for their actions in front of grand juries even if it can be established that they acted maliciously. See *Morrison v. City of Baton Rouge*, 761 F.2d 242 (5th Cir. 1985).

[4] Prosecutorial immunity is based largely on the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423.

immunity unless at the time and under the circumstances of the challenged conduct <u>all</u> reasonable officers would have realized the conduct was prohibited by the federal law on which the suit is founded. *Dudley v. Angel*, 209 F.3d 460 at 462 (5th Cir. 2000); *Pierce v. Smith*, 117 F.3d 866 at 871 (5th Cir. 1997). The question is whether a reasonable officer <u>could</u> have believed that the actions of the defendant officer were lawful in light of clearly established law and the information the officer possessed at the time. *Anderson v. Creighton*, 483 U.S. 635 at 641 (1987). If reasonable officers could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity. *Malley v. Briggs*, 475 U.S. 335 at 341 (1986). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.*

It is the Plaintiff's burden to plead and prove specific facts overcoming qualified immunity. *Elliot v. Perez*, 751 F.2d 1472 at 1479 (5th Cir. 1985). To do so, a claimant "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645 at 648 (5th Cir. 2012); *Meadours v. Ermel*, 483 F. 3d 417 at 421 (5th Cir. 2007); *Hampton v. Pamerleau*, 2015 WL 4953084, at *11 (W.D. Tex. Aug. 18, 2015) ("A complaint which raises the likely issue of immunity cannot be cast in 'broad, indefinite and conclusory terms,' but must include detailed facts supporting the contention that the plea of immunity cannot be sustained."); *Bonner v. Alford,*, 2014 WL 285139, at *2 (N.D. Tex. Jan. 27, 2014) <u>aff'd,</u> 594 F. App'x 266 (5th Cir. 2015) (when qualified immunity is an issue "the complaint is subject to a heightened pleading requirement. The plaintiff must allege 'particularized facts which, if proved, would defeat a qualified immunity defense.'"); *Schultea v. Wood,* 47 F.3d 1427 (5th Cir.1995). Under the heightened pleading standard to overcome

qualified immunity, Plaintiff's conclusory and speculative 4th Amendment allegations fail to state a claim.

Plaintiff extrapolates from the uniformity of the warrant affidavits that the warrant affidavit for his arrest is a "general warrant", so lacking in particularized probable cause that no reasonable officer could believe that probable cause existed. That is, Plaintiff claims that because the affidavits were the same for the persons arrested, particularized probable cause cannot exist. (Pl.'s Comp., pp. 14-16, ¶¶65-73). Reyna enjoys qualified immunity from these claims. First of all, by their very nature, criminal enterprise offenses involve generally uniform facts, so similarity should not be surprising. In any event, the warrant affidavit identifies the Plaintiff and identifies facts which are asserted to apply to the Plaintiff. Thus, all Plaintiff is actually alleging is that the statements in the affidavit are not true, rather than that they do not apply to him.

Even more importantly, in the situation faced by law enforcement at Twin Peaks- involving multiple suspects in a group and clear criminal conduct by members of that group-it was not "clearly established" that the concept of particularized probable cause in the form asserted by the Plaintiff was the applicable standard, or how it would even be applied. "[U]nder this Court's precedent, officers may be able to establish that they had probable cause to arrest an entire group of individuals if the group is observed violating the law *even if specific unlawful acts cannot be ascribed to specific individuals*." *Carr v. District of Columbia*, 587 F.3d 401 at 406 (D.C. Cir.-2009) (emphasis added). *Carr* demonstrates that a reasonable officer could have believed that the Fourth Amendment did not require a probable cause determination with respect to each individual in a large and potentially riotous group before making arrests. See *Bernini v. City of St. Paul*, 665 F.3d 997 at 1003 (8th Cir. 2012). In *Callahan v. Unified Gov't of Wyandotte*

*Cty.*, 806 F.3d 1022 at 1029-30 (10th Cir. 2015), the court noted that the Supreme Court's opinion in *Maryland v. Pringle* affected what constitutes probable cause in multiple suspect, criminal enterprise cases, and discussed competing views, including the view that particularized probable cause for each suspect in a group was *not* the applicable standard in such cases post-*Pringle*. See *Callahan*, 806 F.3d at 1028-29. Thus, Plaintiff's allegations that the 4th Amendment was violated by the use of uniform, identical affidavits is insufficient to overcome Reyna's qualified immunity. The law is not clearly established that such uniform affidavits cannot satisfy probable cause requirements. As a result, Plaintiff's claims against Reyna should be dismissed based on qualified immunity.

Plaintiff's claim under *Franks v. Delaware* likewise fails to overcome Reyna's qualified immunity. Pl.'s Comp., pp. 16-18, ¶¶75-80. In essence, Plaintiff alleges that the warrant affidavit is wrong when it says he was a member of a criminal street gang, and that Defendants knew it was wrong. *Id*. These are conclusory allegations of Defendants' "knowledge" of falsity that are not supported by any factual allegations. Plaintiff also pleads only conclusions, rather than facts, as to the alleged "falsity" of the information itself. See *Fisher v. City of Slidell*, 205 F.3d 1337 (5th Cir. 1999) (conclusory allegations that information was false and known to be false without specific factual allegations in support is insufficient to satisfy qualified immunity heightened pleading requirement); *Morin v. Caire*, 77 F. 3d 116 at 121 (5th Cir. 1996) (same); *DeLeon v. City of Dallas*, 141 F. App'x 258 at 262 (5th Cir. 2005) (conclusory allegation that officers caused documentation to be prepared that falsely implicated the plaintiff failed to state a claim); *Rich v. Hopper*, 985 F.2d 557 (5th Cir. 1993) (conclusory allegations insufficient to state a claim). Plaintiff has not sufficiently pled his claim under *Franks* to overcome Reyna's qualified immunity. Plaintiff's claim against Reyna should be dismissed based on qualified immunity.

### 2) Plaintiff's 14th Amendment Substantive Due Process Claim Fails

Plaintiff's Fourteenth Amendment claim for a violation of his substantive due process rights should also be dismissed. The Due Process Clause contains both a procedural and a substantive component. *United States v. Salerno*, 481 U.S. 739 at 746 (1987). Substantive due process "prevents the government from engaging in conduct that shocks the conscience...or interferes with rights implicit in the concept of ordered liberty..." *Id*. "As a general matter, the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended. *Collins v. City of Harker Heights*, 503 U.S. 115 at 125 (1992) (citing *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 at 225-26 (1985)). Thus, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833 at 842 (1998) (quoting *Albright v. Oliver,* 510 U.S. 266 at 273 (1994)).

Plaintiff's claim for a violation of his substantive due process rights is based on his alleged unlawful arrest, the same conduct for which he brings suit under the 4th Amendment. The 4th Amendment provides a direct, explicit source of Constitutional protection from unlawful seizure, and the Supreme Court has expressly held that there is no substantive due process right under the 14th Amendment to be free from unlawful arrest and prosecution. *Albright*, 510 U.S. at 270-71; see also *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435 at 441-42 (5th Cir. 2015); *Cuadra*, 626 F.3d at 814*; Castellano v. Fragozo*, 352 F.3d 939 at 946-47 (5th Ci. 2003) (en banc).

Nor does Plaintiff's claim fit within the very limited exception to the above-cited authorities applicable to claims of intentional fabrication of evidence. See *Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015). *Cole* provides for a potential 14th Amendment claim when there is intentional fabrication of evidence to frame a person for a crime that the officer knows that the person did not commit. *Id.*, at 772. *Cole* itself distinguished cases like *Bosarge,* where the plaintiff made conclusory allegations that the officers knowingly or recklessly included false information in a warrant affidavit. *Id.*, at 767. In the case at bar, Plaintiff's complaint is much more like the allegations in *Bosarge* than like the allegations in *Cole*. See *Bosarge* 796 F.3d at 442-44. Plaintiff's complaint in this case is made up of conclusory allegations of Defendants "knowingly" or "recklessly" including false or misleading information in the warrant affidavit. Pl.'s Comp., pp. 18-19, ¶¶82-84. Plaintiff makes conclusory allegations as to "knowledge" of falsity without any factual allegations to support that conclusion. *Id*. Plaintiff also pleads conclusory allegations as to the alleged "falsity" of the information itself. *Id.* Thus, like the plaintiff in *Bosarge*, Plaintiff has failed to state a 14th Amendment claim.[5] As Plaintiff's unlawful arrest claim falls squarely under the 4th Amendment, he may not complain of it through a substantive due process claim under the 14th Amendment, and that cause of action should be dismissed. *Id*.

### 3) Plaintiff's Conspiracy Claim Fails

Plaintiff has also sued Reyna for conspiracy, alleging that he conspired with the other Defendants to violate Plaintiff's 4th Amendment rights. (Pl.'s Comp., p. 19, ¶¶86-89). "To prove a conspiracy under 42 U.S.C. § 1983, a plaintiff must show: (1) 'an agreement between private

---

[5] *Cole* involved a very egregious set of facts and was intended to be limited in application. In ***most*** Fourth Amendment cases there will be allegations of false or misleading information. *Cole* was not intended to transform every Fourth Amendment case into a Fourteenth Amendment case by the mere addition of the word "fabricated" to the plaintiff's allegations.

and public defendants to commit an illegal act," and (2) "an actual deprivation of constitutional rights.'" *Latiolais v. Cravins*, 484 Fed.Appx. 983 at 991 (5th Cir. 2012) (quoting *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir.1994). "A conspiracy may be charged under section 1983… *but 'a conspiracy claim is not actionable without an actual violation of section 1983*.'" *Id*., at 989 (quoting *Hale v. Townley,* 45 F.3d 914 at 920 (5th Cir.1995) (emphasis added).  As Defendant has shown that Plaintiff has no viable claim for any violation of his 4th Amendment rights, Reyna cannot be liable for any conspiracy to violate Plaintiff's Constitutional rights, as a matter of law. Plaintiff's conspiracy claim against Reyna should be dismissed.

## IV.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Court grant this motion, and that all Plaintiff's causes of action be dismissed, with prejudice to the refiling of same; Defendant further prays that Plaintiff take nothing by this suit; that all relief requested by Plaintiff be denied; and that Defendant recover all costs of suit and attorney's fees;  Defendant further prays  for such other and further relief, both general and special, at law or in equity, to which he may show himself to be  justly entitled.

Respectfully submitted,

*/s/ Thomas P. Brandt*_____
**THOMAS P. BRANDT**
State Bar No.02883500
tbrandt@fhmbk.com
**STEPHEN D. HENNINGER**
State Bar No.00784256
shenninger@fhmbk.com
**FANNING HARPER MARTINSON**
**BRANDT & KUTCHIN**
A Professional Corporation
Two Energy Square
4849 Greenville Ave., Suite 1300
Dallas, Texas 75206
(214) 369-1300 (office)
(214) 987-9649 (telecopier)
**ATTORNEYS FOR DEFENDANT**
**ABELINO "ABEL" REYNA**

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2016, I electronically filed the foregoing document with the Clerk of the Court through the ECF system and an email notice of the electronic filing was sent to all attorneys of record.

*/s/ Thomas P. Brandt*_____
**THOMAS P. BRANDT**